JOHN HOEHNE, APPELLEE, v. LUDWIG BREITKREITZ, APPELLANT.

1. **Trusts.** B. was authorized by H. to obtain a loan of a certain sum of money on his credit, and with it purchase land for him. B. obtained the loan as authorized and with it purchased the land—taking the title in his own name. H. repaid the loan so obtained on his credit. *Held*, that B. held the title to the land in trust for H., and must convey it to him.

APPEAL from a decree rendered by GRIFFEY, J., sitting in the district court for Cuming county. The case is stated in the opinion.

*Crawford & McLaughlin*, for the appellant, Breitkreitz.

Under the provisions of our law no trust can be created, nor will any trust be implied, or result, unless the same be made in writing and signed by the party declaring the same, unless by some act or acts of the *cestui que trust*, and the trustee, they bring themselves within the exception named in the statute, to-wit: "unless by act or operation of law." Gen. Stat., 392, Sec. 3.

It is well settled in this country, as in England, that if a person purchasing an estate with his own money,

and the deed is taken in the name of another, the trust of the land results, by presumption, or implication of law to him who advances the money. In short, a trust will result to him who has paid the purchase money. See *Dyer v. Dyer*, 1 Leading Cases in Equity, 138. And this is what is meant in law by a trust created by operation of law, and comes within the exception to the statute, and need not be in writing.

It is also just as well settled in this country, that such a trust, known as a resulting trust, may be established by parol testimony, but such evidence must be of such a character as to scarcely leave a reasonable doubt in the mind of the court, before it will be at liberty to declare a resulting trust upon parol evidence. Such evidence must, in the language of the learned judge delivering the opinion in the case of *Dyer v. Dyer*, above referred to, be full, clear and satisfactory. *Noel v. Noel*, 1 Iowa, 423. *Corbit v. Smith*, 7 Id., 60. *Cooper v. Skeel*, 14 Id., 578. *Childs v. Griswold*, 19 Id., 362. *Monroe v. Graves*, 23 Id., 597. Notwithstanding it is conceded by the weight of authority, both English and American, that such trusts may be shown and established by parol evidence, yet it is admitted by the same weight of authority that the doctrine of resulting trusts from the payment of the purchase money is a very questionable one, and should be acted upon with great caution; and the circumstances from which such a trust is to be raised must be clearly proved. 1 Leading Cases in Equity, 273, and cases there cited.

The whole foundation of a resulting trust from having paid the purchase money, is the payment of the money by the *cestui que trust* or by the trustee, with funds which are, in equity, the funds of the *cestui que trust*. A parol agreement that another shall be interested in the purchase of lands, or a parol declaration by the purchaser that he buys for another, will not create a result-

ing trust. So, if a man takes a conveyance of land in his own name and pays for it with his own money, parol evidence, that he was employed to do this as an agent for another, will not create a resulting trust; and if the party who sets up the trust made no payment he cannot show by parol evidence that the purchase was made for his benefit; for, unless there is something more in the transaction than what is implied from the violation of a parol agreement, there is no resulting trust.

Payment of the purchase money must be made at or before the time of purchase; a subsequent payment will not do. The trust must have been coeval with the deeds, or it cannot exist at all. After a party has made a purchase with his own money, or credit, a subsequent tender, or even reimbursement, may be evidence of some other contract, but it cannot by any retrospective effect produce the trust of which we are speaking. There never was an instance of such a trust so created, and there never ought to be. Such trust results only when the purchase is made with the proper monies of the *cestui que trust* and the deed not taken in his name, and the resulting trust must arise, if at all, at the time of the execution of the conveyance. Am. Law Reg., 327. Under the law thus laid down we contend that the evidence does not warrant the court in granting the relief prayed for.

*Uriah Bruner*, argued the cause for appellee, upon a brief prepared by *Stevenson and Valentine*.

Where upon a purchase of property the conveyance of the legal estate is taken in the name of one person, while the *consideration is given or paid by another*, the parties being strangers to each other, a *resulting* or *presumptive* trust immediately arises by virtue of the transaction, and the person named in the conveyance will be a trustee for the party from whom the consideration

proceeds. *Baker v. Vining*, 30 Me., 126. *Livermore v. Aldrich* 5 Cush., 435. *Partridge v. Havens*, 10 Paige, 618. *Depeyster v. Gould*, 2 Green's Ch. 480. *Strimpfler v. Roberts*, 18 Penn. State., 283. *Bank v. Carrington* 7 Leigh., 566. *Creed v. Lancaster Bank*, 1 Ohio State, 1.

So if a trustee buy lands with trust-money in his own name, a trust will arise in favor of him for whom he held the trust fund, at his election, and *parol evidence is competent* to show the fact that the purchase was made with trust-money. And this extends to all cases where one purchases lands with another's money and takes the deed himself. There is in such case a trust in favor of the owner of the money. Wash. Real. Prop., 449, note 7, and cases there cited.

GANTT, J.

The plaintiff avers in his petition, substantially, that the defendant agreed to purchase for him and in his name a tract of timber land in Nebraska; that he furnished the defendant with the money to pay for said land; that the defendant with the same money purchased from the United States the northwest quarter of the southwest quarter of section twenty-seven, in township twenty-three, range five east, in Cuming county, and fraudulently took the title of the same in his own name instead of that of the plaintiff; that he is the owner of the said land, and that the defendant holds the legal title thereof in trust for him, and refuses to convey the same to him as he ought to do. The defendant by his answer denies the material allegations of the petition. The court below found for the plaintiff, and rendered a decree accordingly; and the case is now brought into this court upon appeal.

It appears, that prior to the purchase of the land, the

plaintiff resided in the state of Wisconsin, and the defendant resided in Cuming county, Nebraska. The plaintiff testified that by a correspondence between him and the defendant, the defendant agreed to purchase for him the land in question; that he authorized him to obtain a loan of the money to pay for the land from an acquaintance in Cuming county on his credit, which he would repay when he arrived in said county; that the defendant obtained the loan from one John Melcher on his credit as requested, and with it purchased the land, but took the title in his own name, and on demand refuses to convey the same to him; that on his arrival in Cuming county, he repaid to said Melcher the money so borrowed on his credit. He also testified that the letters he received from the defendant, in respect to the matter, were burnt. This is the substance of the plaintiff's testimony, in relation to the purchase of the land, the borrowing of the money, and his repayment of the same; and his testimony is strongly corroborated by other witnesses. The defendant, however, testifies positively, that he had no such correspondence with the plaintiff, in relation to the purchase of the land, and the borrowing of the money on his credit; and says that he borrowed the money from Melcher on his own credit and for his own use, and with it purchased the land for himself; but his testimony in this regard is in conflict with most of the proofs in the case, and to some extent contradictory to his own. Upon being recalled, he testified that since the commencement of this suit he asked one Wilde if he had read a letter sent by him to the plaintiff, and gives his reason for asking the question as follows: " I wanted to find out whether Wilde knew about the letter I had written to Mr. Hoehne; Mr. Hoehne had sued me, and I wanted to know if he, Wilde, knew anything about the letter I wrote to Hoehne about the timber land." He contradicts himself in regard to his

correspondence with the plaintiff respecting the land. In relation to the borrowing of the money for himself and on his own credit, he is directly contradicted by Melcher, the lender, who testifies the loan was made to and upon the credit of the plaintiff alone, and was re-, paid to him by the plaintiff. Upon these matters the defendant's testimony stands uncorroborated, and to it, perhaps, the maxim, *Falsus in uno, falsus in omnibus*, might be justly applied.

The defendant's testimony in regard to a book account which he claimed to have against the plaintiff (in order to show that the repayment by plaintiff to Melcher was simply the payment of the debt he owed defendant), when examined in connection with the book account presented, will not stand the test of honest criticism, and must defeat the very purpose for which it was fabricated and intended. His own testimony shows the account to have been very recently made up, though it purports to run from 1862 down to 1868, inclusive. The testimony also shows that the loan was obtained from Melcher about the last of December, 1866, and soon thereafter the money was sent to the U. S. land office, at Omaha, but the land then being withheld from sale, the certificate of entry was not issued until the following June; that when it was issued, the defendant delivered it to the plaintiff, who after holding it some time returned it to the defendant upon his promise to execute a deed conveying the title to plaintiff; and that defendant has ever since refused to do so. If the defendant was the owner of the land, or had any interest in it, why did he deliver the certificate of entry to the plaintiff? Why, on return of it to him, did he promise to execute the deed to the plaintiff?

We are satisfied that the proofs in the case very clearly and satisfactorily show that the correspondence was had between the parties in respect to the land; and the de-

fendant was authorized by the plaintiff to obtain from an acquaintance residing in Cuming county, on the credit of plaintiff, the loan of money to pay for the land; that the money was so obtained by defendant from J. Melcher, for and upon the credit of the plaintiff alone; that with the same money the defendant purchased the land in question for the plaintiff, but fraudulently took the title to the same in his own name; and that the plaintiff repaid Melcher the money so loaned to him. It was the plaintiff's money that paid for the land; the land was purchased for him, but the title was fraudulently taken in the name of defendant. It must be borne in mind that the gist of the plaintiff's action is, not that of a verbal agreement creating a trust, but that of a resulting trust by operation of law only. The rule is not questioned that such resulting trust by operation of law may be established by parol proof; but such proof should be received and examined with great caution; it should be sufficiently clear, satisfactory, and conclusive, to establish the trust. We think the proofs bring this case within the rule, and clearly establish a resulting trust in favor of the plaintiff; and therefore, the finding and decree must be for the plaintiff.

DECREE ACCORDINGLY.