[No. 4,139.]

## JOHN SHOEMAKE *v.* J. E. CHALFANT AND N. A. CO-VARRUBIAS, SHERIFF OF THE COUNTY OF SANTA BARBARA.

EFFECT OF DIVORCE ON HOMESTEAD. — A decree of divorce, by which the homestead of the parties is partitioned between them, destroys the homestead, and renders the part partitioned to each, liable to be sold on execution against the party to whom partitioned.

APPEAL from the District Court of the First Judicial District, County of Santa Barbara.

The action was commenced to enjoin the sale of the property in suit, and a preliminary injunction was issued. Subsequently, on the application of the defendant, the injunction was dissolved, and the plaintiff appealed. The judgment on which the execution was issued, was recovered after the homestead declaration was filed. The judgment was not one of the class embraced within the provisions of section 1,241 of the Civil Code.

The other facts are stated in the opinion.

*W. C. Stratton,* for Appellant.

From and after the time a homestead declaration is filed for record, the land therein is a homestead, and is held by

the spouses as joint tenants, and on the death of either, the title at once rests with the survivor, and it is not subject to the payment of any debt or liability previously created by either or both of the spouses, and the protection extended to the homestead is, in case of a sale thereof, extended to the proceeds of such sale. (Section 1265 of the Civil Code, and section 1474 of the Code of Civil Procedure.)

The filing of a homestead declaration places the property therein described forever beyond the reach of creditors; and even after the homestead right in the premises has been relinquished by a grant of them, the homestead right continues in the money received, which cannot be reached by the creditor.

It is contended that because Shoemake was divorced from his wife, the protection to the property against forced sale no longer exists; that he has lost all homestead rights in the property; that the property now is as though no declaration of homestead had been filed.

But our position is, that the homestead right of exemption continues with the property so long as both or either of the spouses have any interest in all or any part of it; that if the divorce decree had given all the property to Mrs. Shoemake, the homestead right would have passed with the title; and that it would have been exempt from forced sale, as it was when she and her husband held it as joint tenants; that, as the homestead was equally divided between husband and wife, each took one half, subject to all the rights and liabilities to which all of the property was subject before the division, and no others.

The community has been dissolved, not by death, but by a decree of the Court, and instead of one survivor there are two, and each holds a part of the homestead which was held by both, and neither part is subject to any debt or liability contracted before the decree, unless the whole property, when held in joint tenancy, of which appellant claims one half, is not over five thousand dollars.

*Fawcett & O'Brien*, for Respondents.

Appellant states the question here presented too broadly.

The question is not as to the general effect of a divorce on a homestead right, but as to the status of the property called the homestead, under the decree in the particular case of *Shoemake* v. *Shoemake*.

This homestead was, by the decree in that-case, divided up, a part set off to the wife and a part to the husband—in short, the property was partitioned. This decree is in force.

The question then is, What effect did this division or partition, acquiesced in by the parties, have' on the homestead property? The respondents claim that it destroyed its homestead character, and that the parties thereafter held their several portions like other property, subject to the payment of debts.

The theory of the Homestead Act, under which the declaration was filed, is, that a homestead is a joint tenancy, with at least one of the main incidents of that estate—survivorship. (Hittell, Secs. 3541, 3544.)

But, by the decrees in *Shoemake* v. *Shoemake*, this joint tenancy was wholly destroyed. Each of the parties received a several portion of the premises, to be held, the decree says, free of all claims on the part of the other, or those claiming by, through or under him or her.

There is, therefore, no longer any right of survivorship. The main support, or characteristic, of the joint tenancy is gone. Hence, we conclude the homestead is destroyed.

If the property is a homestead at all, it is such as an entirety. The whole property is either one homestead or none. There certainly can not have been two homesteads carved out of one. This homestead was originally created for the benefit of the head of a family. It cannot be said that there are now distinct heads of two families, each of whom is furnished with a separate homestead out of this property.

We do not argue that merely because Shoemake was divorced from his wife the homestead was destroyed, but that the decree splitting up the property destroyed it. And we can not now inquire whether the Court ought to have so decreed or not.

By the Court, RHODES, J.:

Block No. 127, in the town of Santa Barbara, which includes the premises in controversy, became, in 1871, the the homestead of the plaintiff and his wife, and so continued up to the time they were divorced by a decree of the District Court, in July, 1873. The decree directed the homestead property to be equally divided between the husband and wife; and the Commissioners having made and reported a partition, the Court confirmed the same, and adjudged that the respective portions allotted to each be held by them respectively, free and clear of all claims by or on the part of the other. The property in controversy was allotted to the plaintiff.

Prior to the divorce, Chalfant, one of the defendants, recovered a judgment against the plaintiff in this action, and, after the decree of divorce was rendered, caused the premises in controversy to be levied upon under an execution issued on his judgment.

The question presented is, whether the premises in controversy remained the homestead of the plaintiff after they were allotted to him by the decree of divorce. The decree severed the sort of joint-tenancy of the parties in the homestead premises, which had been created by the homestead declaration, the residence of the parties, etc., under the provisions of the Homestead Act. It also destroyed the right of survivorship. The joint deed of both parties is no longer essential for the alienation or abandonment of any portion of the premises. The family, for whose benefit the provisions of the Homestead Act were mainly designed, was severed by the decree, and neither the husband nor the wife is entitled to reside on that portion of the homestead premises which was allotted to the other. All the principal qualities of the homestead estate, except that of exemption from liability for debts, etc., having been destroyed by the decree, the latter, in our opinion, was also destroyed. The decree was as effectual in its results as would have been a declaration of abandonment.

It results from these views that the portion of the property which was allotted to the plaintiff was liable to execution for the payment of his debts.

Order affirmed; remittitur forthwith.

Neither Mr. Chief Justice WALLACE, nor Mr. Justice CROCKETT, expressed an opinion.